## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

|  |  |  |
|---|---|---|
| SERGIO CRUZ CRUZ, | ) | |
|      Petitioner, | ) | |
| | ) | |
|     v. | ) | |
| | ) | C.A. No. 25-cv-262-JJM-PAS |
| PAMELA BONDI; KRISTI NOEM; | ) | |
| TODD LYONS; and WARDEN WYATT | ) | |
| DETENTION CENTER, | ) | |
|      Respondents. | ) | |
| | ) | |

## MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Court Chief Judge.

Before the Court is Sergio Cruz Cruz's amended petition for a writ of habeas corpus under 28 U.S.C. § 2241.  ECF No. 21.  Mr. Cruz asserts that his prolonged detention by Immigration and Customs Enforcement ("ICE") is unlawful and that both his initial removal order and the subsequent order reinstating his removal fail to comply with applicable federal laws and regulations.  *Id.*  The Government opposes Mr. Cruz's petition and has moved to dismiss it.  ECF No. 23.  Mr. Cruz has also filed an Emergency Motion for Discovery in which he seeks to challenge an adverse Freedom of Information Act ("FOIA") determination made by U.S. Citizenship and Immigration Services ("USCIS").  ECF No. 26.  The Government opposes this motion as well.  ECF No. 27.

For the reasons set forth below, the Court GRANTS IN PART and DENIES IN PART Mr. Cruz's habeas petition, and GRANTS IN PART and DENIES IN PART

the Government's Motion to Dismiss. The Court also DENIES Mr. Cruz's Emergency Motion for Discovery.

## I.    BACKGROUND

### A.    Statutory and Regulatory Framework

#### 1.    Expedited Removal and the 90-Day Removal Period

Under 8 U.S.C. § 1231(a), "Congress has created an 'expedited removal process' for noncitizens who reenter the United States unlawfully after having previously been removed." *G.P. v. Garland*, 103 F.4th 898, 900 (1st Cir. 2024) (citing *Johnson v. Guzman Chavez*, 594 U.S. 523, 529-30 (2021). Specifically, this provision of the Immigration and Nationality Act ("INA") authorizes the U.S. Department of Homeland Security ("DHS") to reinstate a prior order of removal against a noncitizen who has been found to have "reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal." *D.V.D. v. U.S. Dep't of Homeland Sec.*, 778 F. Supp. 3d 355, 366 (D. Mass. 2025) (citing 8 U.S.C. § 1231(a)(5)). This decision is not subject to being reopened or reviewed. *Id.* Once the prior order has been reinstated, DHS must remove the noncitizen within a 90-day "removal period."[1] *Guzman Chavez*, 594 U.S. at 528 (citing 8 U.S.C. § 1231(a)(1)(A)). Noncitizens are subject to mandatory detention during this period. *Id.* (citing 8 U.S.C. § 1231(a)(2)).

---

[1] This "removal period" begins on the latest of three dates: "(1) the date the order of removal becomes 'administratively final,' (2) the date of the final order of any court that entered a stay of removal, or (3) the date on which the [noncitizen] is released from non-immigration detention or confinement." *Guzman Chavez*, 594 U.S. at 528 (quoting 8 U.S.C. § 1231(a)(1)(B)).

While Section 1231(a) bars noncitizens from pursuing "nearly all avenues of relief from removal," they may still seek other forms of protection through withholding of removal, 8 U.S.C. § 1231(b)(3), or relief under the Convention Against Torture ("CAT"), 8 C.F.R. §§ 238.1(f)(3), 241.8(e). *D.V.D.*, 778 F. Supp. 3d at 366; *G.P.*, 103 F.4th at 900 (citing *Guzman Chavez*, 594 U.S. at 530-32). These protections prevent a noncitizen's deportation to a particular country where they demonstrate a "reasonable fear of persecution or torture." 8 U.S.C. 1231(b)(3)(A); *see also Guzman Chavez*, 594 U.S. at 530-31. If a noncitizen makes this showing, then they are placed in "withholding-only proceedings" before an immigration judge ("IJ"), who ultimately determines whether they are entitled to these protections. *D.V.D.*, 788 F. Supp. 3d at 366 (citing 8 C.F.R. §§ 208.31(b), (e); 8 C.F.R. § 1208.2(c)(3)(i)). The IJ's decision as to withholding can be appealed to the Board of Immigration Appeals ("BIA") and then to the relevant circuit court of appeals. *Guzman Chavez*, 594 U.S. at 531 (citing 8 C.F.R. §§ 208.31(e), 1208.31(e)); *Alvarado-Reyes v. Garland*, 118 F.4th 462, 470 (1st Cir. 2024) (reviewing BIA's denial of withholding claim).

If an IJ grants withholding of removal, then DHS is prohibited from removing the noncitizen to the specific country as to which the noncitizen has demonstrated a likelihood of persecution or torture. *Guzman Chavez*, 594 U.S. at 536. However, the noncitizen's removal order "remains in full force," and DHS retains the authority to remove them to a third country. *Id.* DHS is also authorized to continue detaining noncitizens going through withholding of removal proceedings pursuant to Section

1231's detention provisions.  *Id.* at 535; *see also Johnson v. Arteaga-Martinez*, 596 U.S. 573, 575-76 (2022).

### 2.    8 C.F.R. § 241 and the Post 90-Day Removal Period

If the 90-day removal period has elapsed and the noncitizen has not yet been removed, then they are only subject to discretionary detention, meaning they "'may be detained' or may be released under terms of supervision." *Arteaga-Martinez*, 596 U.S. at 575 (quoting 8 U.S.C. § 1231(a)(6)).  Unlike other provisions of the INA, however, Section 1231(a) does not require the Government to provide a noncitizen with a bond hearing before an IJ where the Government bears the burden of justifying the noncitizen's continued detention.  *Id.* at 581 (distinguishing between Section 1226(a), which provides for bond hearings at the outset of detention, and Section 1231(a)(6), which does not); *see also Hernandez-Lara v. Lyons*, 10 F.4th 19, 39 (1st Cir. 2021) (discussing the Government's burden of proof in Section 1226(a) cases).

Instead, if ICE wishes to continue detaining a noncitizen held under Section 1231(a) beyond the 90-day removal period, then ICE will conduct a "custody review." *Jimenez v. Cronen*, 317 F. Supp. 3d 626, 641 (D. Mass. 2018) (citing 8 C.F.R § 241.4). As part of this review, ICE must follow certain agency procedures codified at 8 C.F.R. § 241.4.  *Id.*  These procedures are intended to provide the noncitizen with fundamental due process protections that courts have found to be constitutionally required, such as the right to notice and an opportunity to be heard.  *Id.* at 655 (citing Detention of Aliens Ordered Removed, 65 F.R. 80281–01, at 80283 (2000)); *see also Rombot v. Souza*, 296 F. Supp. 3d 383, 388 (D. Mass. 2017); *D'Alessandro v. Mukasey*,

628 F. Supp. 2d 368, 388-403 (W.D.N.Y. 2009)).  When ICE fails to follow these procedures, a court may conduct the custody review itself and order the noncitizen released.  *Jimenez*, 317 F. Supp. 3d at 642 (citing *Rombot*, 296 F. Supp. 3d at 388-89).

The procedures under 8 C.F.R. § 241.4 are as follows.  First, ICE must conduct the initial custody review "prior to the expiration of the removal period" or "as soon as possible thereafter." *Id.* (citing 8 C.F.R. §§ 241.4(h)(1), (k)(1)(i), (k)(2)(iv)).  Second, ICE must "provide written notice to the detainee approximately 30 days in advance of the pending records review" so that they may submit information in support of their release.  *Id.* (citing 8 C.F.R. § 241.4(h)(2)).  Third, ICE must "forward by regular mail a copy of any notice or decision that is being served" on the noncitizen to the noncitizen's attorney, if they are represented.  *Id.* (citing 8 C.F.R. § 241.4(d)(3)).

To be released under terms of supervision, the noncitizen must show that: their immediate removal is not practical or proper; they are not likely to be violent or "pose a threat to the community following release"; and they do not "pose a significant risk of flight" or of "violat[ing] the conditions of release." *Id.* (quoting 8 C.F.R. § 241.4(e)).  ICE must also consider whether the noncitizen is "'a significant flight risk or may abscond to avoid removal,' 'favorable factors, including ties to the United States such as the number of close relatives residing here lawfully,' and factors bearing on the [noncitizen's] dangerousness, such as criminal history, disciplinary infractions, and past immigration violations, among others." *Id.* (quoting 8 C.F.R. § 241.4(f)).  Finally,

ICE must issue a written decision, briefly explaining its reasoning behind continuing detention or ordering supervised release. *Id.* (citing 8 C.F.R. § 241.4(d)).

### 3. *Zadvydas* and the "Presumptively Reasonable" 6-Month Period

If ICE opts for continued detention, the agency is by no means authorized to hold the noncitizen indefinitely. *See Zadvydas v. Davis*, 533 U.S. 678, 697, 699 (2001). In *Zadvydas*, the Supreme Court made clear that detention under Section 1231 is authorized only so long as it is "reasonably necessary to secure [the noncitizen's] removal." *Id.* at 699. Such detention is "presumptively reasonable" for up to six months. *Id.* at 701. Reasonableness is measured by looking to the statute's basic purpose, which is assuring the noncitizen's presence at the moment of removal. *Id.* at 699. After the six months are up, if the noncitizen "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the Government must either rebut that showing or release the noncitizen. *Guzman Chavez*, 594 U.S. at 529 (quoting *Zadvydas*, 553 U.S. at 699-700).

### B. Factual and Procedural History

Mr. Cruz is a citizen of Mexico and is a member of the minority indigenous Mixteca-De-Oaxaca community. ECF No. 21 at 2. He speaks Mixteco, a language spoken by the indigenous people of Mexico. *Id.* When Mr. Cruz was 16 years old, his father disappeared and those responsible for the disappearance called his family to threaten them and demand money. *Id.* at 3. The family was unable to pay, and Mr. Cruz's father was never seen or heard from again. *Id.* Fearful of this and other

events, Mr. Cruz fled Mexico in 2014 and attempted to enter the United States as an unaccompanied child. *Id.*

U.S. Customs and Border Protection ("CBP") officers encountered Mr. Cruz at the border, found him to be inadmissible, and issued him a removal order (the "2014 Expedited Removal Order"). ECF No. 23 at 7. While Mr. Cruz states that he received the order from CBP, he claims that it was never explained to him in any language he understood. ECF No. 21 at 3. Nevertheless, CBP removed him the following day. ECF No. 23 at 7. Later in 2014, Mr. Cruz reentered the United States, where he has remained for the past 11 years. ECF No. 21 at 3-4.

In 2018, Mr. Cruz applied to USCIS for asylum and withholding of removal. *Id.* at 3. This application remains pending. *Id.* at 4. In the meantime, since submitting to the required biometrics collection, USCIS has issued Mr. Cruz an employment authorization document, which enables him to work legally in the United States until 2029. *Id.*

On or about May 24, 2025, CBP detained Mr. Cruz in Waltham, Massachusetts. ECF No. 21 at 4; ECF No. 23 at 7. Immigration authorities issued him a Notice of Intent/Decision to Reinstate Prior Order (the "2025 Reinstatement Order"), which reinstated the 2014 Expedited Removal Order. ECF No. 23 at 7. ICE subsequently took custody of Mr. Cruz, and he was detained at the Wyatt Detention Facility in Central Falls, Rhode Island. *Id.* at 7-8.

On July 7, 2025, an asylum officer with USCIS interviewed Mr. Cruz, in which he claimed a fear of returning to Mexico. *Id.* at 8. Following the interview, the asylum

officer issued a negative reasonable fear determination. *Id.* Mr. Cruz requested that an Immigration Judge ("IJ") review this decision. *Id.*

On July 29, 2025, the IJ vacated the asylum officer's negative reasonable fear determination and found that Mr. Cruz held a "reasonable fear" of being returned to Mexico and was entitled to a "withholding-only" hearing. *Id.*; ECF No. 21 at 5. Mr. Cruz's withholding-only hearing was scheduled to occur on October 21, 2025, in the Chelmsford Immigration Court. ECF No. 23 at 8.

On August 21, 2025—Day 89 of his detention—ICE conducted a "custody review" of Mr. Cruz and subsequently issued him a "Decision to Continue Detention." *Id.* at 8, 14. In making its decision, ICE considered the factors set forth at 8 C.F.R. §§ 241.4(e), (f), and (g) and determined that Mr. Cruz "pose[d] a significant flight risk" and that ICE "expect[ed] to receive … travel documents … and removal is practicable, likely to occur in the reasonably foreseeable future, and in the public interest." *Id.* at 12-13.

On October 21, 2025, Mr. Cruz appeared in Immigration Court for his withholding-only hearing. ECF No. 25 at 1. He requested a Mixteco interpreter. *Id.* Because there was no such interpreter available, the IJ ordered that Mr. Cruz's hearing be continued until November 24, 2025, so that it could find such an interpreter. *Id.*

On November 24, 2025—exactly six months since ICE first detained him—Mr. Cruz appeared again in Immigration Court. ECF No. 28 at 1. This time, his hearing

was able to take place, and the IJ denied his withholding-only application. *Id.* The appeal is due on December 24, 2025. *Id.*

Mr. Cruz filed the present petition in the U.S. District Court for the District of Massachusetts on May 30, 2025. ECF No. 1. After ICE moved Mr. Cruz from Massachusetts to Rhode Island, the case was transferred to this Court. *See* ECF No. 10. Mr. Cruz has since amended his habeas petition. ECF No. 21. In it, he seeks release from ICE custody, an order declaring that the 2014 Expedited Removal Order and the 2025 Reinstatement Order violate his due process rights, and an order declaring that ICE's custody review did not comport with the requirements of the U.S. Constitution and other applicable federal rules and regulations. *Id.* at 8-9. The Government objects to Mr. Cruz's petition and has moved to dismiss it. ECF No. 23.

On November 18, 2025, Mr. Cruz also filed an emergency motion for discovery. ECF No. 26. On August 26, 2025, Mr. Cruz through counsel filed a FOIA request with USCIS, asking the agency to produce his immigration file. *Id.* at 1. USCIS responded to this request by releasing some documents in full and in part and withholding several other documents. *Id.* As such, Mr. Cruz moved for an order from this Court compelling USCIS to produce his full immigration file. *Id.* The Government also objects to this request on jurisdictional and statutory grounds. ECF No. 27.

## II.    DISCUSSION

### A.    Mr. Cruz's Challenge to the Removal Order and Its Reinstatement

The Government first argues that, with respect to Mr. Cruz's challenges to the 2014 Expedited Removal Order and the 2025 Reinstatement Order, this Court is barred from reviewing such claims.  ECF No. 23 at 9.  The Government asserts that, if a noncitizen reenters the United States after having been removed, their prior removal order is reinstated, and it is "not subject to being reopened or reviewed."  *Id.* (quoting 8 U.S.C. § 1231(a)(5)).  Instead, the Government claims that such an action can only be pursued in a federal court of appeals.  *Id.* (citing 8 U.S.C. § 1252).

The Government is correct that this Court lacks subject-matter jurisdiction to review Mr. Cruz's removal order and the decision to reinstate it.  As the First Circuit has observed, the jurisdiction-channeling provision of the INA provides federal courts of appeals with "the sole and exclusive means for judicial review of an order of removal."  *Gicharu v. Carr*, 983 F.3d 13, 16 (1st Cir. 2020) (quoting 8 U.S.C. § 1231(a)(5)).  This jurisdictional limit extends to reinstatement orders because they are "the functional equivalent of … final order[s] of removal."  *Lattab v. Ashcroft*, 384 F.3d 8, 13-14 (1st Cir. 2004) (quoting *Arevalo v. Ashcroft*, 344 F.3d 1, 5 (1st Cir. 2003)).

Relatedly, 8 U.S.C. § 1252(b)(9) makes it so that the immigration court and the BIA decide all legal and factual questions "arising from" the removal process, "with judicial review of those decisions vested exclusively in the courts of appeals."  *Aguilar v. U.S. Immigr. & Customs Enf't*, 510 F.3d 1, 9 (1st Cir. 2007)).  However, claims that

are "independent of, or wholly collateral to, the removal process" do not "arise from" the removal process and can be heard by the district court. *D.V.D.*, 778 F. Supp. 3d at 371-72 (quoting *Gicharu*, 983 F.3d at 16).

For example, claims that challenge an IJ's removability determination or assert a deficiency in the removal proceeding necessarily "arise from" the removal process, and a district court is therefore statutorily barred from hearing such claims. *Id.*; *see also Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011) (finding that district court was precluded from hearing noncitizen's challenge to reinstatement of her removal order); *Aguilar*, 510 F.3d at 13-14 (finding that district court was precluded from hearing noncitizen's claim regarding denial of right to counsel during removal proceeding). Of particular import here, the First Circuit held in *Gicharu* that the district court lacked subject matter jurisdiction over a noncitizen's claim alleging that service of a final order of removal was defective because service of the removal order is "inextricably intertwined" with the removal process. 983 F.3d at 17 (quoting *Aguilar*, 510 F.3d at 13).

This Court is statutorily barred from considering Mr. Cruz's challenges to the 2014 Expedited Removal Order and the 2025 Reinstatement Order. Specifically, he asserts deficiencies in the way ICE created these orders and issued them to him, arguing that they fail to comply with applicable federal laws, rules, and regulations. ECF No. 21 at 6, 8. However, these sorts of deficiencies are of the type that are "inextricably intertwined" with the removal process and are therefore barred from judicial review by this Court. *Gicharu*, 983 F.3d at 17; *Aguilar*, 510 F.3d at 9.

Because the Court lacks subject matter jurisdiction over Mr. Cruz's challenges to his removal and reinstatement orders, the Court GRANTS the Government's motion to dismiss this claim.

### B.    Mr. Cruz's Challenges to His Detention

Although it lacks jurisdiction to consider his removal and reinstatement orders, this Court is nevertheless authorized to consider a challenge to Mr. Cruz's continued detention. *Bustillo v. Immigr. & Naturalization Serv.*, No. Civ. A. 06-63S, 2006 WL 1495579, at *2 (D.R.I. May 25, 2006) (citing *Hernández v. Gonzales*, 424 F.3d 42, 42-43 (1st Cir. 2005)). As the First Circuit has noted, noncitizens may pursue habeas challenges to the legality of their detention because they are independent of removal proceedings and, thus, not barred by 8 U.S.C. § 1252(b)(9). *Aguilar*, 510 F.3d at 11 (citing *Hernández*, 424 F.3d at 42); *see also Goncalves v. Reno*, 144 F.3d 110, 120 (1st Cir. 1998). The Court will now turn to Mr. Cruz's detention claims.

Though he does not make this distinction explicitly, Mr. Cruz seems to be challenging his detention on both statutory grounds (i.e., a "*Zadvydas* claim") and constitutional grounds (i.e., a "Due Process claim"). ECF No. 21 at 9 (seeking relief under "the numerous federal court decisions concerning detention under the immigration laws" and "the Due Process Clause"). First, he suggests that his prolonged detention violates the framework set forth by the Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678 (2001). ECF No. 21 at 7-8. Second, he claims that his prolonged detention without a bond hearing violates the Due Process Clause of the Fifth Amendment. *Id.* at 8-9. Recognizing that other courts have analyzed these

two claims separately, this Court will do the same. *See, e.g., Cabrera Galdamez v. Mayorkas*, No. 22 Civ. 9847 (LGS), 2023 WL 1777310, at *4 (S.D.N.Y. Feb. 6, 2023) (analyzing noncitizen petitioner's procedural due process and *Zadvydas* claims separately); *G.P. v. Garland*, No. 1:23-cv-322-PB, 2024 WL 328435, at *5 (D.N.H. Jan. 29, 2024) (distinguishing between "a *Zadvydas* claim" and "a due process claim" in noncitizen detainee context). Before turning to the merits, however, the Court must first address the Government's exhaustion argument.

### 1.    Exhaustion

The Government asserts that Mr. Cruz should be required to exhaust his administrative remedies before pursuing these challenges to his detention. ECF No. 23 at 3, 9. This argument is unavailing. First, no statute at issue requires exhaustion. This case is instead governed by the "more permissive" common-law exhaustion standard. *Brito v. Garland*, 22 F.4th 240, 256 (1st Cir. 2021). Under this standard, the court may find exhaustion to be unnecessary where "a particular plaintiff may suffer irreparable harm if unable to secure immediate judicial consideration of his claim" or "if a substantial doubt exists about whether the agency is empowered to grant meaningful redress." *Portela-Gonzalez v. Sec'y of the Navy*, 109 F.3d 74, 77 (1st Cir. 1997) (citing *McCarthy v. Madigan*, 503 U.S. 140, 147-48 (1992)).

Here, Mr. Cruz is challenging his continued detention by ICE, a "loss of liberty [that] is a … severe form of irreparable injury." *Ferrara v. United States*, 370 F. Supp. 2d 351, 360 (D. Mass. 2005); *see also Brito*, 22 F.4th at 256 (noting that

"exhaustion might not be required if [the petitioner] were challenging her incarceration … or the ongoing deprivation of some other liberty interest"). Additionally, because Mr. Cruz is not statutorily eligible for a bond hearing before an IJ, *see Arteaga-Martinez*, 596 U.S. at 581 (citing 8 U.S.C. § 1231(a)(6)), the only agency that is able to review his continued detention is ICE. Requiring ICE to review Mr. Cruz's custody would be an exercise in futility given that ICE has *already* reviewed Mr. Cruz's custody and has decided to continue his detention. ECF No. 23 at 8; *see Salazar-Martinez v. Lyons*, No. 2:25-cv-00961-KG-KBM, 2025 WL 3204807, at *1 (D.N.M. Nov. 17, 2025) (finding exhaustion unnecessary where ICE already reviewed petitioner's custody and decided to continue her detention).

Accordingly, the Court waives any exhaustion requirement and proceeds to the merits of Mr. Cruz's detention claims.

### 2.    *Zadvydas* Claim

Mr. Cruz first argues that his continued detention violates *Zadvydas* and a line of other "federal court decisions concerning detention under the immigration laws." ECF No. 21 at 7-9. In *Zadvydas*, the Supreme Court construed Section 1231 to contain an implicit time limit in which the detention of noncitizens held under that statute was "presumptively reasonable" for a period of six months. 533 U.S. at 701. The Court further held that, after this six-month period, noncitizens could challenge their prolonged detention if they could provide "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* If a noncitizen can make this showing, then "the Government must respond with evidence

sufficient to rebut that showing" or release the noncitizen subject to supervision.  *Id.*; *see also G.P.*, 103 F.4th at 901 (citing 8 C.F.R. § 241.13).

There is no dispute that Mr. Cruz has been detained longer than the "presumptively reasonable" six-month period.  He contends that ICE's claim that his "removal is practicable, likely to occur in the reasonably foreseeable future, and in the public interest" now "makes no sense" given that he is still waiting for his withholding of removal claim to be resolved.  *Id.* at 5; *see also* ECF No. 24 at 8.  In essence, he argues that the length of his detention will ultimately end up being much longer as his case works its way through the appeals system.  ECF No. 24 at 8 (citing *Demore v. Kim*, 538 U.S. 510 (2003)).

Regarding Mr. Cruz's *Zadvydas* claim, the Court finds itself constrained by the First Circuit's ruling in *G.P. v. Garland.  See* 103 F.4th 898.  In that case, a petitioner had been detained under Section 1231 for over three years after ICE reinstated his prior removal order and, while he was awaiting the resolution of his withholding-only proceedings before an IJ, he brought a habeas claim in federal court, arguing that there was "no significant likelihood of [his] removal in the reasonably foreseeable future," and that he should therefore be released subject to supervision.  *Id.* at 899-900.  The First Circuit denied the petitioner relief because, even though his detention "well surpasse[d] the presumptively reasonable six-month post removal period," his situation was not like the "potentially permanent" and "removable-but-unremovable limbo" that the petitioners in *Zadvydas* found themselves in.  *Id.* at 901-02 (quoting *Zadvydas*, 533 U.S. at 691; *Jama v. Immigr. & Customs Enf't*, 543 U.S. 335, 347

(2005)). The difference, the court pointed out, was that the petitioners in *Zadvydas* had exhausted their administrative and judicial remedies and were being detained only because the Government was struggling to find third countries that would accept them. *Id.* at 901 (citing *Zadvydas*, 533 U.S. at 684-86).

By contrast, the petitioner in *G.P.* was being detained while his withholding proceedings were ongoing and that, once those proceedings ended, he would either be removed to his native country or the Government would have to look for a different country that could take him in. *Id.* at 902. The First Circuit thus concluded that the petitioner could not show that there was "no significant likelihood of [his] removal in the reasonably foreseeable future" because "withholding-only proceedings are *finite*" and, because they "have a definite ending point, then so too must the detention pending the resolution of those proceedings." *Id.* at 902-03 (emphasis in original) (citing *Castaneda v. Perry*, 95 F.4th 750, 757 (4th Cir. 2024). Also, absent any indication that the petitioner's proceedings "[had] dragged on because of bad faith or undue delay by the agency," the court stated that he could not otherwise succeed on his *Zadvydas* claim. *Id.* at 902.

Here, Mr. Cruz's *Zadvydas* claim cannot proceed because *G.P.* controls. Mr. Cruz is being detained while his withholding-only proceedings remain pending. Though the IJ denied his withholding claim, *see* ECF No. 28 at 1, Mr. Cruz has indicated that he intends to appeal this decision to the BIA and the First Circuit, if necessary. *See* ECF No. 21 at 5; *see also* ECF No. 24 at 8. Even if this appeals process winds up being lengthy, the *G.P.* court found that Mr. Cruz's detention is ultimately

"finite" and not like the indefinite detention contemplated in *Zadvydas*. 103 F.4th at 902-04.  Put another way, Mr. Cruz's detention will terminate when his last appeal is resolved, and that alone does not render his removal unlikely to occur in the reasonably foreseeable future.  *Id.*

As such, the Court must DENY Mr. Cruz's *Zadvydas* claim and GRANT the Government's Motion to Dismiss this claim.

### 3.    Due Process Claim

While Mr. Cruz may not be able to challenge his detention on *Zadvydas* grounds, he may bring an as-applied constitutional challenge to his detention.  As the district court stated in *G.P.*, courts "do not leave noncitizens who are detained during protracted withholding-only proceedings without a means to challenge the lawfulness of their detention."  2024 WL 328435, at *5.  Indeed, even though the court denied the petitioner's *Zadvydas* claim, it acknowledged that "[n]oncitizens who have been detained during lengthy withholding-only proceedings retain the right to challenge their detention on *constitutional grounds* even though their proceedings are ongoing." *Id.* (emphasis added) (citing *Cabrera Galdamez*, 2023 WL 1777310, at *7-8).  On appeal, the First Circuit left the district court's pronouncement undisturbed.  *G.P.*, 103 F.4th at 902 n.3 ("[The petitioner] challenges his detention under only *Zadvydas*.... [W]e need not consider any constitutional claim.").

Relatedly, the petitioner in *Arteaga-Martinez* argued that "reading his detention under § 1231(a)(6) not to require bond hearings when detention becomes prolonged raises serious due process concerns."  596 U.S. at 583 (internal quotations

omitted).  The Supreme Court chose not to address these constitutional arguments and instead left them "for the lower courts to consider in the first instance." *Id.*  That analysis is precisely what this Court will now undertake.

The Fifth Amendment provides that "[n]o person shall be ... deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V.  The Due Process Clause applies to all persons in the United States regardless of citizenship status.  *Zadvydas*, 533 U.S. at 693.  Where, as here, a noncitizen brings an as-applied due process challenge to their prolonged detention, courts have applied the three-part *Mathews* balancing test.  *See Cabrera Galdamez*, 2023 WL 1777310, at *4-8; *see also Chavez-Gonsalez v. Ball*, No. 6:23-CV-06238 EAW, 2024 WL 1268282, at *4-7 (W.D.N.Y. Mar. 26, 2024); *Trejo v. Warden of ERO El Paso E. Montana*, No. EP-25-CV-401-KC, --- F. Supp. 3d ----, 2025 WL 2992187, at *7-10 (W.D. Tex. Oct. 24, 2025); *Caceres v. Joyce*, No. 25-cv-1844 (LAK), 2025 WL 3171865, at *4-5 (S.D.N.Y. Nov. 13, 2025).

Under *Mathews*, a court considers: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

### a.    Private Interest

Here, there is no question that Mr. Cruz's private interest is strong.  He is asserting "the most elemental of liberty interests—the interest in being free from physical detention by [the] government."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004).  "'In our society liberty is the norm,' and detention … 'is the carefully limited exception.'"  *Id.* (quoting *United States v. Salerno*, 481 U.S. 739, 755 (1987)).  Courts have been careful not to "'minimize the importance and fundamental nature" of the individual's right to liberty.'"  *Id.* at 529-30 (quoting *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)).  In the same vein, "[i]t is clear that commitment for *any* purpose constitutes a significant deprivation of liberty that requires due process protection."  *Id.* at 530 (quoting *Jones v. United States*, 463 U.S. 354, 361 (1983)).

Thus far, Mr. Cruz has been detained for over six months, which is longer than the mandatory 90-day removal period laid out in Section 1231, *see Guzman Chavez*, 594 U.S. at 528 (citing 8 U.S.C. § 1231(a)(2)), and longer than the presumptively reasonable period contemplated in *Zadvydas*, 533 U.S. at 701.  During this time, Mr. Cruz has been separated from his partner and his one-year-old son, and he has been unable to see and support them.  ECF No. 21 at 4.  Instead, he finds himself confined alongside criminal offenders, even though he himself has not been convicted of a criminal offense—a finding that causes the first *Mathews* factor to weigh heavily in his favor.  *See Hernandez-Lara*, 10 F.4th at 28; *Sampiao v. Hyde*, No. 1:25-cv-11981-JEK, --- F. Supp. 3d ----, 2025 WL 2607924, at *10 (D. Mass. Sept. 9, 2025).

As such, the first prong of the *Mathews* test weighs in favor of Mr. Cruz.

b.    **Risk of Erroneous Deprivation**

The second factor is the risk of erroneous deprivation of Mr. Cruz's liberty interest. At this stage in the *Mathews* calculus, the primary interest is that of the detained individual—not the Government. *See Hamdi*, 542 U.S. at 530 (citing *Carey v. Piphus*, 435 U.S. 247, 259, 266 (1978)). As such, courts must consider whether "the procedures underpinning [the detainee's] lengthy incarceration markedly increased the risk of error." *Chavez-Gonsalez v. Ball*, 2024 WL 1268282, at *5 (quoting *Velasco Lopez v. Decker*, 978 F.3d 842, 852 (2d Cir. 2020)). This analysis is highly fact specific. *Id.* at 6.

Here, the procedures underpinning Mr. Cruz's incarceration "increase the risk of error" because he has been detained for over six months "without an individualized hearing before an impartial adjudicator." *Cabrera Galdamez*, 2023 WL 1777310, at *6; *see also Goldberg v. Kelly*, 397 U.S. 254, 271 (1970) ("And, of course, an impartial decision maker is essential."). The only review Mr. Cruz has been able to obtain of his continued custody has occurred "through [a] non-appealable, internal review[ ] performed by ICE itself," which is the custody review it must conduct under 8 C.F.R. § 241.4. *Cabrera Galdamez*, 2023 WL 1777310, at *6. While these proceedings are supposed to provide noncitizens with due process, they nevertheless suffer from three significant shortcomings:

> First, the regulations place the burden on Petitioner rather than the Government. *See Moncrieffe v. Holder*, 569 U.S. 184, 201 (2013) (noting detained noncitizens "have little ability to collect evidence"); *Hernandez-Lara*, 10 F.4th at 31 ("[P]roving a negative (especially a lack of danger) can often be more difficult than proving a cause for concern."). Second, the decision is by ICE itself, not an outside arbiter such as an

immigration judge.  Finally, the regulations do not provide for an in-person hearing, where Petitioner can present his argument, call witnesses and confront the Government's evidence.

*Id.*

Mr. Cruz has also put forth at least one error that ICE committed in his custody review.  Section 241.4(d)(3) provides certain procedural requirements that ICE must follow in notifying the noncitizen's attorney of any custody determinations that the agency makes.  *See* 8 C.F.R. § 241.4(d)(3)).  First, the attorney must complete Form G-28, Notice of Entry of Appearance as Attorney or Representative, to notify the agency that they will be representing the noncitizen.[2]  *Id.*  Once this form is filed, ICE is required to "forward by regular mail a copy of any notice or decision that is being served" on the noncitizen to the noncitizen's attorney.  *Id.*  Mr. Cruz alleges that, in violation of Section 241.4(d)(3), ICE did not send a copy of its decision to continue his detention to his attorney, William Hahn.  ECF No. 21 at 5.

It is undisputed that Mr. Hahn filed his Form G-28 with DHS either on or before July 30, 2025, indicating that he would be representing Mr. Cruz.  *See* ECF No. 21-1 at 12.  It is also undisputed that ICE was aware that Mr. Hahn was the attorney of record for Mr. Cruz.  On August 21, 2025, when ICE issued its decision to continue Mr. Cruz's detention, Mr. Cruz wrote Mr. Hahn's name on the line where it prompted him to indicate the name of his attorney.  *See id.* at 17.  Right below that line is the signature of Keith Chan, DHS and ICE's Assistant Field Office Director, who acknowledged that he was "approving" the document.  *Id.*; *see also* ECF No. 23-

---

[2] A copy of Form G-28 is available at: https://www.uscis.gov/g-28.

1 at 2 (regarding Mr. Chan's statement that he has "examined the official records available to me regarding Sergio Cruz Cruz").

But there is no evidence that ICE ever sent Mr. Hahn notice of the continued detention decision. In fact, the record shows that Mr. Hahn received the decision only after the Government—not the agency itself—attached it as an exhibit in its Response In Opposition to Mr. Cruz's Habeas Petition. *See* ECF No. 18-2 at 1-4; *see also* ECF No. 23 at 13. The Government filed the Response on September 5, 2025— more than two weeks after ICE issued its decision to continue Mr. Cruz's custody. *See* ECF No. 18. In other words, were it not for Mr. Cruz petitioning this Court for habeas relief in the first place, it is unclear whether ICE would have ever provided Mr. Hahn with the reasoning underlying its decision to continue detaining his client.

Plain and simple, ICE did not follow its own regulation, as it is required to do. *See Rombot*, 296 F. Supp. at 388 ("ICE, like any agency, 'has the duty to follow its own federal regulations.'") (quoting *Haoud v. Ashcroft*, 350 F.3d 201, 205 (1st Cir. 2003)). The Government attempts to downplay the situation. In its briefing, the Government essentially says that it included the decision as an exhibit, and that Mr. Hahn was clearly able to access it because he subsequently included the decision as an exhibit in Mr. Cruz's Amended Petition[3]—so no harm, no foul. ECF No. 23 at 13 (citing ECF No. 21-1 at 15). To be sure, "not every procedural misstep or difficulty raises … a constitutional issue." *Teng v. Mukasey*, 516 F.3d 12, 17 (1st Cir. 2008).

---

[3] The Amended Petition was filed on September 17, 2025. *See* ECF No. 21. The Decision to Continue Detention is marked as Exhibit 8. ECF No. 21-1 at 15.

However, "when the government violates a regulation intended to protect a fundamental right derived from the Constitution or a federal statute, such as the Fifth Amendment right to notice and an opportunity to be heard, the court may order relief." *Jimenez*, 317 F. Supp. 3d at 655 (citing *Waldron v. Immigr. & Naturalization Serv.*, 17 F.3d 511, 518 (2d Cir. 1993)). And, as explained earlier, 8 C.F.R. § 241.4 was promulgated to provide noncitizens with fundamental due process protections that courts have found to be constitutionally required. *Id.* (citing 65 Fed. Reg. at 80283). The ability to be assisted during the custody-review process by an attorney of the noncitizen's choosing is one such protection. *See* 8 C.F.R. § 241.4(d)(3). This protection is undermined where, as here, ICE fails to provide the attorney with notices or decisions pertaining to their client's detention.[4]

Finally, Mr. Cruz has provided sufficient evidence that "the Government might find difficult to overcome if it had to demonstrate affirmatively that [he] poses a risk of flight or danger to the community necessitating his continued detention." *Cabrera Galdamez*, 2023 WL 1777310, at *6 (quoting *Jimenez v. Decker*, No. 21 Civ. 880, 2021 WL 826752, at *9 (S.D.N.Y. Mar. 3, 2021)). Some important things to consider are

---

[4] This protection is especially important given that, in recent months, noncitizens in ICE custody have often been denied the ability to communicate with their attorneys. *See, e.g.*, *Vasquez Perdomo v. Noem*, No. 2:25-cv-05605-MEMF-SP, 2025 WL 3192939, at *1 (C.D. Cal. Nov. 13, 2025) (finding that the federal government was "blocking access to lawyers" who were representing noncitizen detainees being held in a Los Angeles detention center); *C.M. v. Noem*, No. 25-CV-23182-RAR, --- F. Supp. 3d ----, 2025 WL 2400953, at *15-16 (S.D. Fla. Aug. 18, 2025) (declining to dismiss claim that federal government was "unlawfully restrict[ing]" access to lawyers who were representing noncitizens being held at so-called "Allegator Alcatraz" detention center in Florida but transferring claim to another venue).

that Mr. Cruz has been in the United States for eleven years and has no criminal record.  ECF No. 24 at 7; *cf. Cabrera Galdamez*, 2023 WL 1777310, at *6 ("[T]he mere fact of [Petitioner's] unlawful entry into the United States with a subsequent removal order and his single criminal case from thirteen years ago that resulted in a misdemeanor conviction may not be sufficient to substantiate that Petitioner poses a risk of flight or danger to the community").  Mr. Cruz also works and supports his partner and young child, who is a U.S. citizen.  ECF No. 24 at 7; *cf. Cabrera Galdamez*, 2023 WL 1777310, at *6 (finding that Petitioner had "strong incentives to stay in New York City" given that he had a place to stay with his mother and young daughter and that he had obtained a food handling certificate that would help him in his search for employment outside of detention).  Given these considerations, it is unlikely that Mr. Cruz poses a flight risk or is a danger to the community.

Accordingly, the second *Mathews* prong also weighs in Mr. Cruz's favor.

### c.  Government Interest

The third *Mathews* factor is the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.  *Mathews*, 424 U.S. at 335.  The Government possesses a fundamental interest in detaining those who present a flight risk or who are a danger to the community.  *See Zadvydas*, 533 U.S. at 690; *Hernandez-Lara*, 10 F.4th at 33.  As explained above, Mr. Cruz neither poses a flight risk nor is a danger to the community: he has a supportive family waiting for him at home, he has no

criminal record, and he has an interest in how his withholding proceeding will play out before the BIA and the First Circuit, if necessary.

The third *Mathews* factor also looks to the "public interest," which disfavors "expending substantial resources on needless detention." *Hernandez-Lara*, 10 F.4th at 33 (citing *Velasco Lopez*, 978 F.3d at 854 n.11 (noting that detention of noncitizens "costs taxpayers approximately $134 per person, per day, according to ICE's estimates")). Unnecessary detention also "imposes substantial societal costs" and "separates families and removes from the community breadwinners, caregivers, parents, siblings, and employees." *Id.* (quoting *Velasco Lopez*, 978 F.3d at 855). Mr. Cruz's case stands as a clear example of unnecessary detention, and this factor too weighs in his favor.

\* \* \*

As all three *Mathews* factors weigh in Mr. Cruz's favor, the Court finds that the Government has deprived Mr. Cruz of his constitutional right to due process under the Fifth Amendment by subjecting him to prolonged detention without affording him a bond hearing. As such, the Court GRANTS Mr. Cruz's as-applied constitutional claim and DENIES the Government's Motion to Dismiss this claim.

### 4.    Remedy

Having concluded that Mr. Cruz has successfully established a due process violation, the Court must now determine the appropriate remedy. In this area, courts have a fair degree of flexibility. *See, e.g.*, *Burnett v. Lampert*, 432 F.3d 996, 999 (9th Cir. 2005) ("Federal courts have a fair amount of flexibility in fashioning specific

habeas relief."); *Siraj v. United States Sent'g Comm'n*, No. 19-cv-03375 (ABJ), 2021 WL 1061701, at *6 (D.D.C. Mar. 18, 2021) ("Federal courts have the power and discretion under federal habeas to fashion a wide-range of appropriate relief.") (citing *Peyton v. Rowe*, 391 U.S. 54, 66-67 (1968)).

First and foremost, Mr. Cruz is entitled to a bond hearing.  Though Section 1231 does not itself require the Government to provide noncitizens with bond hearings, Mr. Cruz's "entitlement to a bond hearing in this case emanates from the Due Process Clause, not from the post-removal detention statute."  *Juarez v. Choate*, No. 1:24-cv-00419-CNS, 2024 WL 1012912, at *8 (D. Colo. Mar. 8, 2024).  The Court is also persuaded that placing the burden of proof on the Government to justify Mr. Cruz's continued detention comports with due process.  *See Cabrera Galdamez*, 2023 WL 1777310, at *8-9.  Thus, at Mr. Cruz's bond hearing, the Government will bear the burden of proving either: (1) "by clear and convincing evidence that [he] poses a danger to the community" or (2) "by a preponderance of the evidence that [he] poses a flight risk."  *Hernandez-Lara*, 10 F.4th at 41.

Mr. Cruz has also requested that he be immediately released.  ECF No. 21 at 9.  Thus far, Mr. Cruz has been detained longer than the mandatory "90-day removal period," *Guzman Chavez*, 594 U.S. at 528 (citing 8 U.S.C. § 1231(a)(2)), and longer than the "presumptively reasonable" six-month period contemplated in *Zadvydas*, 533 U.S. at 701.  In that time, he has been separated from his partner and his one-year-old son—time he will never get back.  ECF No. 21 at 4.  Given that this prolonged detention violates his due process rights, the Court finds that Mr. Cruz's immediate

release is appropriate. *See Morrisey v. Brewer*, 408 U.S. 471, 481 (1972) ("It has been said so often by this Court and others as not to require citation of authority that due process is flexible and calls for such procedural protections as the particular situation demands."). Mr. Cruz's immediate release shall be subject to reasonable conditions of supervision provided under 8 U.S.C. § 1231(a)(3).[5] *See, e.g.*, *Gomez v. Mattos*, No. 2:25-cv-00975-GMN-BNW, 2025 WL 3101994, at *7 (D. Nev. Nov. 6, 2025) (ordering similar relief); *Salazar-Martinez*, 2025 WL 3204807, at *3 (same).

### C.  Mr. Cruz's Challenge to His Adverse FOIA Determination

Mr. Cruz has also filed an Emergency Motion for Discovery in which he seeks to compel USCIS to produce his complete immigration file under FOIA, 5 U.S.C. § 552. ECF No. 26 at 1. FOIA requires federal agencies to provide government records to requesting members of the public under specified procedures outlined in the

---

[5] 8 U.S.C. § 1231(a)(3) provides:

> If the [noncitizen] does not leave or is not removed within the removal period, the [noncitizen], pending removal, shall be subject to supervision under regulations prescribed by the Attorney General. The regulations shall include provisions requiring the [noncitizen]—
>
>> (A) to appear before an immigration officer periodically for identification;
>> (B) to submit, if necessary, to a medical and psychiatric examination at the expense of the United States Government;
>> (C) to give information under oath about the [noncitizen's] nationality, circumstances, habits, associations, and activities, and other information the Attorney General considers appropriate; and
>> (D) to obey reasonable written restrictions on the [noncitizen's] conduct or activities that the Attorney General prescribes for the [noncitizen].

statute. *See Milner v. Dep't of the Navy*, 562 U.S. 562, 564 (2011). Previously, Mr. Cruz filed a FOIA request with USCIS and asked for information related to his immigration case, but the agency responded by releasing some documents in full and some in part while withholding several other documents. *Id.* Mr. Cruz now seeks an order from this Court, compelling USCIS to release his full immigration file. *Id.*

There are two problems with this request. First, as the Government points out in its briefing, USCIS is not a named party to this habeas proceeding. ECF No. 27 at 1. In fact, no federal agency has been named in Mr. Cruz's amended petition. *See* ECF No. 21 at 2 (naming only Pamela Bondi, Kristi Noem, Todd Lyons, and the Warden of Wyatt Detention Center as parties to this lawsuit). This is a problem because FOIA actions may be brought only against federal agencies; they may not be brought against individual defendants.[6] *See, e.g.*, *Martinez v. Bureau of Prisons*, 444 F.3d 620, 624 (D.C. Cir. 2006); *Antonelli v. Fed. Bureau of Prisons*, 591 F. Supp. 2d 15, 19 n.3 (D.D.C. 2008).

Second, Mr. Cruz sought FOIA relief by way of a motion to compel, rather than through a separately filed complaint. ECF No. 27 at 1-2. FOIA expressly provides that "[o]n complaint, the district court of the United States ... has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld." 5 U.S.C. § 552(a)(4)(B). Because of this

---

[6] Though some courts have relaxed this requirement for *pro se* litigants and have allowed them to substitute parties for the "real party in interest." *See, e.g.*, *Schotz v. Samuels*, 72 F. Supp. 3d 81, 88 (D.D.C. 2014); *Roseberry-Andrews v. Dep't of Homeland Sec.*, 299 F. Supp. 3d 9, 19 n.3 (D.D.C. 2018).

language, courts that have considered the issue have determined that "a motion to compel is not the proper vehicle to challenge a non-party agency's decision to withhold information sought under the FOIA." *Coles v. Scion Steel Inc.*, No. 2:18-CV-13754, 2019 WL 861119, at *2 (E.D. Mich. Feb. 22, 2019) (citing *Upsher-Smith Lab'ys, Inc. v. Fifth Third Bank*, 2017 WL 7369881, at *3-4 (D. Minn. Oct. 18, 2017)).

Instead, FOIA obligates "a requester to challenge an adverse determination, after exhausting the intra-agency appeals process, by filing a *separate complaint* against the withholding federal agency in a distinct lawsuit." *Upsher-Smith Lab'ys*, 2017 WL 7369881, at *3 (emphasis added) (citing *Lincoln Nat'l Bank v. Lampe*, 421 F. Supp. 346, 348 (N.D. Ill. 1976)); *see also Burrell v. Rodgers*, 438 F. Supp. 25, 26 (W.D. Okla. 1977) ("[I]t seems apparent that Congress did not intend that a de novo hearing on the propriety of a refusal to release information could be triggered by nothing more than a discovery subpoena."). "The statute does not authorize additional methods to challenge an agency's adverse FOIA determination." *Upsher-Smith Lab'ys*, 2017 WL 7369881, at *4.

This Court is therefore without jurisdiction to entertain Mr. Cruz's challenge to his adverse FOIA determination. Accordingly, the Court DENIES the Emergency Motion for Discovery.

## III.    CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Mr. Cruz's habeas petition. ECF No. 21. The habeas petition is GRANTED to the extent that Mr. Cruz has successfully established an as-applied due process

violation related to his prolonged detention.  The petition is DENIED as to Mr. Cruz's challenges to his removal and reinstatement orders, as well as his *Zadvydas* claim. The Court also DENIES Mr. Cruz's Emergency Motion for Discovery.  ECF No. 26.

The Government is hereby ORDERED to provide Sergio Cruz Cruz with a bond hearing before an IJ under *Hernandez-Lara* within ten days of the date of this order. 10 F.4th at 41.  The Court further ORDERS the Government to **release Sergio Cruz Cruz immediately** pending the bond hearing.  The Government shall impose reasonable conditions of supervision as set forth in 8 U.S.C. § 1231(a)(3). Determining reasonable conditions of supervision shall not in any way impede the immediate release of Mr. Cruz.  The Court also ORDERS the Government to file a status report within five days of Mr. Cruz's bond hearing, stating whether he has been granted bond and, if his request for bond was denied, the reason for that denial.

IT IS SO ORDERED.

*/s/ John J. McConnell, Jr.*

_____
JOHN J. MCCONNELL, JR.
Chief Judge
United States District Court

November 26, 2025